**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

SARAH M. STEFFEK, and JILL
VANDENWYNGAARD, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

         *vs.*                              Case No.: 1:18-cv-00160-WCG

CLIENT SERVICES, INC., a Missouri
Corporation; and, JOHN AND JANE DOES
NUMBERS 1 THROUGH 25,

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

       Plaintiffs, Sarah M. Steffek and Jill Vandenwyngaard, have moved this Court enter an Order determining that their lawsuit may proceed as a class action against Defendant, Client Services, Inc. ("Client Services"). This Memorandum of Law is submitted in support of Plaintiffs' motion.

### I.    RELEVANT PROCEDURAL HISTORY AND FACTS

*A.    Procedural History*

       On January 30, 2018, Plaintiffs filed this class action lawsuit. [Doc. 1]. Plaintiffs' Complaint alleges Client Services violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by mailing thousands of initial template collection letters that failed to identify the name of the creditor to whom their debts are owed in an unambiguous manner required by the §§ 1692g(a)(2) and 1692e and Seventh Circuit case authority. *Id.*

       Client Services was personally served with process on February 2, 2018 [Doc. 3] and, on February 23, 2018, it filed an Answer to the Complaint [Doc. 6].

The Parties, through counsel, subsequently met and conferred pursuant to this Court's Order [Doc. 8] and Fed. R. Civ. P. 26(f). On March 9, 2018, the Parties filed their Joint Rule 26(f) Planning Report. [Doc. 9].

On March 9, 2018, Plaintiffs served Client Services with their initial sets of Interrogatories, Requests for Production of Documents, and Requests for Admission. [*Thomasson Decl.*, ¶11].

On March 23, 2017, the Court conducted a Rule 16 Scheduling Conference and subsequently entered a Scheduling Order governing certain case deadlines. [Doc. 11].

On May 24, 2018, Client Services served its "Supplemental and Amended Responses" to Plaintiffs' First Sets of Interrogatories, Requests for Production of Documents, and Requests for Admission. [*Thomasson Decl.*, ¶¶8-11, Exhs. 1, 2, and 3].

B.  *Nature of the Case and Facts Relevant to Class Certification*

Client Services mailed an initial collection letter dated February 22, 2017 to Plaintiff, Sarah M. Steffek, which sought to collect an alleged debt, and which she received in the ordinary course of mail. ("Steffek Letter"). [Doc. 1, Exh. A; *Thomasson Decl.*, ¶7, Exh. 1 at No. 9; ¶8, Exh. 2 at No. 14; ¶9, Exh. 3 at Nos. 7 and 15; and ¶10, Exh. 4 at CSI0056-57]. Client Services also mailed an initial collection letter dated February 22, 2017 to Plaintiff, Jill Vandenwyngaard, which sought to collect an alleged debt, and which she received in the ordinary course of mail. ("Vandenwyngaard Letter"). [Doc. 1, Exh. B; *Thomasson Decl.*, ¶7, Exh. 1 at No. 11; ¶8, Exh. 2 at No. 15; ¶9, Exh. 3 at Nos. 8 and 16; and ¶10, Exh. 4 at CSI0057-58].

The Steffek Letter and Vandenwyngaard Letter are collectively referred to herein as the "Letters."

The Letters are computer-generated, template form letters, which Client Services uses to collect debts from Wisconsin residents. [*Thomasson Decl.*, ¶9, Exh. 3 at Nos. 13-18 and 19-23].

Client Services use the number "809" to identify its template collection Letters at issue in this lawsuit. [*Id.* at ¶7, Exh. 1 at Nos. 9 and 11; Doc. 1 at Exhs. A and B].

The Letters each list a "BALANCE DUE," "RE: CHASE BANK USA, N.A.," a partial "ACCOUNT NUMBER," and then state, "The above account has been placed with our organization for collections." [Doc. 1, Exhs. A and B]. The Letters neither identify a "creditor," the name of the entity to whom the debt is owed, or even the name of the entity who "placed" the accounts for collection. [Doc. 1, ¶¶28-32 and 44-48; Exhs. A and B].

Plaintiffs seek certification of a class defined as follows:

> All persons with addresses in the State of Wisconsin to whom Client Services, Inc. mailed an initial written communication, between January 30, 2017 and February 20, 2018, which was not returned as undeliverable, and which lists "RE: CHASE BANK USA, N.A." and states "The above account has been placed with our organization for collections."

Client Services revealed in discovery that there are approximately 4,300 persons who meet the foregoing Class definition [*Thomasson Decl.*, ¶8, Exh. 1 at Nos. 5 and 12; and ¶10, Exh. 3 at Nos. 15-23] and that Class members can be identified using its business records [*Id.* at ¶10, Exh. 3 at No. 29].

## II. THE FAIR DEBT COLLECTION PRACTICES ACT

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This Act "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C.

§§1692d, 1692e, 1692f, and 1692g.

In enacting the FDCPA, Congress recognized the:

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

*Ramirez v. Apex Financial Management LLC*, 567 F. Supp. 2d 1035, 1042 (N.D. Ill. 2008) held that, "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated." *See also, Sonmore v. CheckRite Recovery Services, Inc.*, 187 F. Supp. 2d 1128, 1132 (D. Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose"). Further, "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

The Seventh Circuit has long held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014) (citations omitted) ("[I]n deciding whether ... a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived."). Moreover, in the Seventh Circuit, "the test for determining whether a debt collector violated [the

FDCPA] is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) citing *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

Plaintiff need not prove intent, bad faith or negligence; "debt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009). And, pursuant to 15 U.S.C. §1692k, statutory damages are recoverable for violations regardless of whether the consumer proves actual damages—"[all] that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *accord*, *Blarek v. Encore Receivable Management*, 244 F.R.D. 525, 528 (E.D. Wis. 2007).

### III.     STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. The Seventh Circuit has noted that class actions allow for the aggregation of small claims held by many consumers. *Mace*, 109 F.3d at 344 quoted with approval in *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Thus, denial of class certification would lead to situations where consumers holding a small claim are unlikely to pursue relief given the costs involved, to the benefit of unscrupulous businesses which, in violating the law, obtain a significant financial benefit from their illegal actions without fear of meaningful litigation.

To thwart serial violations by debt collectors, Congress expressly recognized the propriety of class actions under the FDCPA, by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and 1692k(b) class action cases. As a result, numerous FDCPA class actions have been certified—including many handled by this Court and also by Plaintiffs' counsel in this case. *See*, *Smith v. Simm Assocs.*, No. 17-C-769, 2018 U.S. Dist. LEXIS 5638 (E.D. Wis. Jan. 12, 2018); *see also, Thomasson Declaration* at ¶¶2-5.

### IV.    THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23

*A.    Rule 23(a)(1) – Numerosity*

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiff need not specify the exact number of class members; reasonable estimates and common-sense assumptions are sufficient. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 525 (E.D. Wis. 2014) (quoting *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (A "class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable.")

In the Seventh Circuit, a class as small as forty may satisfy the numerosity requirement. *Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006); *see also, Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 578 (E.D. Wis. 2004), *vacated on other grounds sub nom. Clarke ex rel. Pickard v. Ford Motor Co.*, 228 F.R.D. 631 (E.D. Wis. 2005) ("Generally, the numerosity requirement is met if the putative class consists of forty or more.").

Here, Client Services admits there approximately 4,300 persons who meet the foregoing Class definition [*Thomasson Decl.*, ¶8, Exh. 1 at Nos. 5 and 12; and ¶10, Exh. 3 at Nos. 15-23] and that Class members can be identified using its business records [*Id.* at ¶10, Exh. 3 at No. 29]. Accordingly, the numerosity requirement is satisfied.

### B.     *Rules 23(a)(2) and 23(b)(3) – Commonality and Predominance*

Fed. R. Civ. P. 23(a)(2) requires that class members share a common question of law or fact. Commonality is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Doster Lighting, Inc. v. E-Conolight LLC*, No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499, *5 (E.D. Wis. June 17, 2015) (E.D. Wis. June 17, 2015) (quoting *Suchanek v. Sturm Foods,* 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). Even a single such common question is enough to satisfy Rule 23(a)(2), and the existence of a mixture of common and individual questions presents an issue of whether common questions "predominate" over individual questions under Rule 23(b)(3), not an issue of commonality under Rule 23(a)(2). *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 314 F.R.D. 449, 452 (E.D. Wis. 2016).

Thus, predominance is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (citation omitted):

> If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Id.* (citations omitted). *See also, Doster Lighting, Inc.*, 2015 U.S. Dist. LEXIS 78499 at *8 (Common issues predominate "if they have a direct impact on every class member's effort to establish liability, and if that impact is more substantial than the impact of individualized issues in resolving the claims.")

Here, Plaintiffs seeks statutory damages only, and not actual damages, for themselves and class members, so there are no individual issues related to damages. In this case, the predominant question shared by all class members are:

> (1) Whether Client Services has a practice of mailing initial collection letters, in the form of Exhibits A and B to Plaintiffs' Complaint [Doc. 1], which fail to adequately identify the creditor to whom the debt is owed; and
>
> (2) Whether Client Services's foregoing collection letters violate §§ 1692e, 1692e(10), and 1692g(a)(2) of the FDCPA.

The only individual issue is the identification of class members, which is a ministerial task Client Services has already performed. [*Thomasson Decl.*, ¶8, Exh. 1 at Nos. 5 and 12; and ¶10, Exh. 3 at Nos. 15-23 and 29]. Thus, commonality and predominance are satisfied.

## C.     *Rule 23(a)(3) – Typicality*

Fed. R. Civ. P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. The Seventh Circuit has held that, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (Citation and internal quotation marks omitted.)

Here, typicality is inherent in Plaintiffs' proposed class definition. By definition, Client Services mailed Plaintiffs and each class member the same standardized, templated, collection letter which violated the FDCPA in the same manner (*i.e.*, by failing to identify the

creditor/owner of the debt in an unambiguous manner), entitling each of them to damages. Thus, typicality is satisfied.

D.     **Rule 23(a)(4) – *Adequacy of representation***

Fed. R. Civ. P. 23(a)(4) requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013). The burden of establishing this standard is "not difficult." *Smith v. Simm Assocs.*, 2018 U.S. Dist. LEXIS 5638 at *7 citing *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

Both considerations are satisfied here. Plaintiffs have retained counsel experienced in litigating class actions and complex consumer claims and they do not have any conflicting interests with the class members. [*Thomasson Decl.*, ¶¶2-6; 11]. Further, the Plaintiffs and class members seek money damages pursuant to 15 U.S.C. §1692k as the result of Client Services's unlawful collection practices. Given the identity of claims between the Plaintiffs and class members, there is neither the potential for conflicting interests in this action nor any antagonism between the interests of Plaintiffs and class members.

E.     **Rule 23(b)(3) – *Superiority***

Class actions are especially appropriate for resolving FDCPA claims. *See, e.g., Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). Where, as here, Client Services engaged in standardized conduct by attempting to collect debts through a misleading template letter, each class member's claim is likely too small to vindicate through an

page **9** of **10**

Case 1:18-cv-00160-WCG    Filed 05/25/18    Page 9 of 10    Document 15

individual suit. A class action, on the other hand, as the Seventh Circuit has held, is an efficient and effective way to obtain relief to individual class members. *Mace*, 109 F.3d at 344. It is also highly unlikely individual class members are aware Client Services violated the law by attempting to collect debts using the letters at issue and, therefore, unlikely to be able to find an attorney to take the case, as an individual case would be economically unfeasible. *Id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to grant their motion for certification of a class under Fed. R. Civ. P. 23(a) and (b)(3).

Respectfully submitted this 25th Day of May 2018.

    *s/ Andrew T. Thomasson*
Philip D. Stern (NJ Bar # 045921984)
Andrew T. Thomasson (NJ Bar # 048362011)
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
Facsimile: (973) 532-2056
E-Mail: philip@sternthomasson.com
E-Mail: andrew@sternthomasson.com

*Attorneys for Plaintiffs, Sarah M. Steffek and Jill Vandenwyngaard*

page **10** of **10**

Case 1:18-cv-00160-WCG   Filed 05/25/18   Page 10 of 10   Document 15