IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SARAH M. STEFFEK, and JILL
VANDENWYNGAARD, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

     *vs.*                                  Case No.: 1:18-cv-00160-WCG

CLIENT SERVICES, INC., a Missouri
Corporation; and, JOHN AND JANE DOES
NUMBERS 1 THROUGH 25,

                Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Sarah M. Steffek and Jill Vandenwyngaard moved for class certification. [Doc. 14.] Client Services filed opposition. [Doc. 23.] Plaintiffs submit this Memorandum in reply.

## I. STANDARD FOR CLASS CERTIFICATION

Although the Parties are in substantial agreement as to the applicable standard, to the extent they differ, Client Services' opposition should be rejected because it is not based on proper authority. Other than its reliance on one Supreme Court decision, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Client Services relied on four Sixth Circuit decisions and one Fifth Circuit decisions. Client Services failed to cite any binding Seventh Circuit decisions or decisions from any district court within the Seventh Circuit. Indeed, there is not a Seventh Circuit decision cited anywhere in Client Services' Memorandum; and the only decision from a district court within this Circuit was an unpublished 1996 decision from the Northern District of Illinois cited in ¶18 for a general proposition of law regarding superiority.

## II.     ADEQUACY.

In ¶¶7–11 of its Memorandum, Client Services challenged Steffek's and Vandenwyngaard's adequacy as class representatives. Client Services cited no authority for what is required to establish adequacy. Instead, Client Services attacked adequacy on two grounds. It noted Plaintiffs didn't have a plan in place to resolve any disagreement which might hypothetically arise were they to disagree about how to respond to a settlement proposal. It also mentioned Ms. Steffak did not recall seeing the Complaint until a week before her deposition and each Plaintiff had a different recollection of the number which Client Services' discovery responses disclosed as the class size. None of those facts affect adequacy.

A proposed representative may represent a class if the four facts in Rule 23(a) exist. The fourth requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The Rule is expressly limited to the "representative parties" and the 2003 amendment to Rule 23 divorced the adequacy of proposed counsel from whether a class should be certified. *See*, Fed. R. Civ. P. 23(g). Thus, once a class is certified, the court must appoint counsel. Nevertheless, most courts continue to include the adequacy of class counsel as a separate prong in their adequacy analysis. *See*, e.g., *Savanna Grp. v. Truan*, No. 10 C 7995, 2013 WL 626981, at *1 (N.D. Ill. Feb. 20, 2013) (quoting *Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir. 2002), a pre-amendment decision, for the proposition that, to determine adequacy under 23(a)(4), "the performance of the class lawyer is inseparable from that of the class representative."). Here, however, Client Services does not contest counsel's adequacy.

Regarding the adequacy of class representatives to fairly and adequately protect the interests of the class, there are two components. 1 *Newberg on Class Actions* (5th) § 3:54 at 333.

The first component "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Client Services does not cite any conflict between Plaintiffs and the class. Rather, its reference to conflicts is possible disagreements between the two Plaintiffs and Ms. Steffek's lack of knowledge of any pre-arranged dispute resolution process. Those proffered facts do not reflect any conflicting interests between those of the class and those of the Plaintiffs. Thus, there is no evidence having any tendency to prove any conflict affecting adequacy.

The other component looks at the representative's ability, through the use of counsel, to prosecute the interests of the class. *Newberg* § 3:54 at 333. Indulging Client Services arguments, it points to the lack of a pre-arranged process to resolve disputes between the Plaintiffs, their different recollection of the class size reported in Client Services' discovery responses, and not remembering having seen the Complaint more than a week before their deposition. None of those undermine the adequacy of either Plaintiff.

When "assessing the likelihood that named plaintiffs will vigorously prosecute all class claims, courts focus mainly upon the competence and experience of class counsel." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996). As the Seventh Circuit explained:

> Whenever certain named persons purport to represent others without their knowledge or consent, the court must be assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interests. That requires competent and experienced counsel able to conduct the litigation.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981). Thus, absent a conflict of interest, a proposed class representative is adequate

knowing only the most basic facts about the case and about the role of a class representative. *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996).

As reflected by the extreme facts in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966), the level of a plaintiff's capacity to act as a class representative—as distinguished from that plaintiff's ability to prosecute the class claims when teamed up with competent counsel—is very low. The Supreme Court, applying Rule 23, held Mrs. Surowitz was adequate to represent a class of shareholders on claims of a multi-million-dollar fraud scheme perpetrated by Hilton's officers and directors. During her deposition:

> Mrs. Surowitz showed in her answers to questions that she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct, and in fact that in signing the verification she had merely relied on what her son-in-law had explained to her about the facts in the case.

*Id.* at 366. (Rule 23.1, which specifically addresses shareholder derivative suits would not be effective until July 1, 1966, months after *Surowitz* was decided but Rule 23.1 similarly requires the plaintiff to "fairly and adequately represent" the shareholders' interests.)

Based on *Surowitz*, class representation in other cases have been deemed adequate when they "could not identify the class period," or "did not know that two complaints had been filed in his name." *Discovery Zone Sec. Litig.* at 109.

Similarly, in *Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 425 (N.D. Ill. 1978), both Hernandez and Ashford were adequate notwithstanding that they were unaware of any claims until they were identified by counsel when each of them had sought legal counsel for unrelated purposes, they had not read the complaint by the time they were deposed, and Ashford was not aware he was a party until months after the fact.

page **4** of **14**

Case 1:18-cv-00160-WCG    Filed 07/25/18    Page 4 of 14    Document 25

Client Services' complaints about the adequacy of Ms. Steffek and Ms. Vandenwyngaard do not demonstrate any basis to conclude either of them, with the aid of counsel, will fail to vigorously prosecute the interests of the class. Indeed, a complete read of the deposition transcripts which Client Services submitted reflect properly informed lay class representatives. See, e.g., *Steffeck Trans.* (Doc. 23-1) 41:14–41:25, 42:8–43:4, 43:5–44:24, 47:3-5; and *Vandenwyngaard Trans.* (Doc. 23-2) 63:5–65:5, 68:7–69:18.

Plaintiffs have the burden of proof as to adequacy, as well as all other elements under Rule 23. The burden is met by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (relying on *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). As is the case here, absent a plaintiff's conflict of interest or incompetent counsel, the burden as to adequacy is met "by a simple demonstration of facts in the motion for class certification." 1 *Newberg on Class Actions* (5th) §3:55 at 336. In the Motion, Plaintiffs established both the absence of any conflict and the competency of proposed counsel. [Doc. 15 at 9, citing to Doc. 16 at ¶¶2–6 and 11.] Therefore, Client Services' challenge to adequacy fails.

### III.     COMMONALITY.

Commonality only requires "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). This case is about Client Services having mailed the same form letter to Plaintiffs and to the class members in an attempt to collect allegedly defaulted Chase credit card accounts without identifying to whom the debt was then owed. Client Services estimated the same form letter was mailed to 4,300 Wisconsin addresses. Plaintiffs seek statutory damages for themselves and the class as allowed under 15 U.S.C. § 1692k(a)(2). Thus, this case involves the same kinds of claims for the same practices and, therefore, there is commonality.

Client Services argued there is no commonality because it contends there is a need to conduct an individual inquiry into (1) whether each debt is of the type to which the FDCPA applies, and (2) whether each class member read the letter. Both arguments are without merit. There is not need for any individualized inquiry.

### A. *Client Services Attempted to Collect Consumer Debts from the Class.*

The FDCPA only applies to the collection of a "debt" as defined in 15 U.S.C. § 1692a(5). That section provides:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

Note: To avoid confusion between a "debt" covered by the FDCPA and other debts, the term "consumer debt" is used to mean the type defined by the FDCPA.

The FDCPA's definition of a "consumer," 15 U.S.C. § 1692a(3), is limited to a natural person who either owes or is alleged to owe a consumer debt. Thus, by definition , a consumer must be someone who owes or is alleged to owe a consumer debt.

Client Services contends the Court will have to have individual investigations to determine whether each debt is a consumer debt. Not so. In its Answer (Doc. 6), Client Services admitted the following allegations:

> 27. On advice of counsel, STEFFEK alleges that, on information and belief, the Steffek Letter is a computer-generated from [sic] a template or form that CLIENT SERVICES uses to collect defaulted *consumer* debts.
>
> 43. On advice of counsel, VANDENWYNGAARD alleges that, on information and belief, the Vandenwyngaard Letter is a computer-generated from [sic] a template or form that CLIENT SERVICES uses to collect defaulted *consumer* debts.

page **6** of **14**

Complaint [Doc. 1] (emphasis added).

Plaintiffs requested Client Services to admit "Members of the Class can be Identified using Your business records," and Client Services responded, "Defendant denies a class exists but admits to having business records reflecting letter [sic] sent to *consumers*." Doc. 16-3 at ¶29.

The fact the template used to create the letters to each Plaintiff was used to send letters to consumers and Client Services' business records reflect letters sent to consumers tends to make it more probable than not that the letters were sent to consumers and that Client Services' records can be used to identify who were consumers without engaging in any individual investigation.

### B.  *Proof is Not Required that Class Members Read the Letter.*

Seventh Circuit precedent—none of which is cited in Client Services' Memorandum—quickly disposes of this issue. Plaintiffs only seek statutory damages for themselves and the class. Consequently, whether anyone actually read the letter is irrelevant.

In *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997), a collection attorney mailed a letter which was alleged to be confusing. Heibl mailed the letter "which Bartlett received but did not read." *Id.* at 499. The Seventh Circuit concluded whether Bartlett read the letter or was misled or confused by it are not relevant when there is no claim for actual damages. *Id.* Thus, "whether a dunning letter violates the Fair Debt Collection Practices Act does not require evidence that the recipient *was* confused—or even, as we noted earlier, whether he read the letter." *Id.* at 501. Instead, the issue is resolved by the objective unsophisticated consumer standard. *Id.*

Client Services also raised the issue as to whether its letters were received. The mailbox rule disposes of that argument. The letters were mailed. "The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it

reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884). Client Services offered no evidence to rebut the presumption.

For these reasons, there is no need for any individualized inquiry as to the letters' receipt by class members or whether they were read.

## IV. SUPERIORITY.

As its final argument, Client Services questions whether there is superiority. Under Fed. R. Civ. P. 23(b)(3), the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule identifies four matters pertinent to a superiority finding:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

### A. *Likelihood of Class Members Bringing Individual Claims.*

In their Motion, Plaintiffs asserted the unlikelihood of class members finding an attorney to assert the claims asserted here on an individual basis. Client Services attacks that assertion by pointing out that Plaintiffs' attorneys have brought individual cases, the FDCPA's fee-shifting feature creates an incentive for lawyers to bring FDCPA claims, the FDCPA created a cottage industry of FDCPA plaintiffs' lawyers, and 10,000 FDCPA cases are filed annually. By asserting these arguments, Client Services reveals its failure to understand superiority.

Plaintiffs never contended it was impossible for individual class members to bring claims—merely that it was unlikely. Despite the fee-shifting incentive and the number of FDCPA cases filed, and a cottage industry of lawyers, Client Services points to no cases whether

any of the 4,300 class members sought to bring any of the same claims asserted in this case. The absence of even one other case demonstrates the accuracy of Plaintiffs' statement that it is unlikely class members would bring individual claims.

And Client Services citation to Judge Glasser's decision in *Jacobson v. Healthcare Financial Servs., Inc.* and its disparaging "cottage industry" comment is not merely an unnecessary attack on Plaintiffs' counsel but ignores the content of the Second Circuit's reversal. The FDCPA did not create a cottage industry any more than any other statute did—thus, the tax code created a much larger industry of tax lawyers, accountants, and payroll services. Congress passes laws and lawyers provide their time and advice based on their training and experience to clients who seek to enforce their rights under those laws. Thus, the cottage industry comment is ill-founded.

The reversal of Judge Glasser's decision, however, brings us back to the superiority issue by confirming the unlikelihood of others bringing claims.

> In the event of a transgression, the FDCPA provides for enforcement by the Federal Trade Commission and by other administrative agencies. But it also grants a private right of action to a consumer who receives a communication that violates the Act. In addition to compensatory damages, the Act empowers district courts to award "additional damages" of up to $1,000 per consumer, and mandates the award of attorneys' fees to successful plaintiffs. In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as "private attorneys general" to aid their less sophisticated counterparts, *who are unlikely themselves to bring suit under the Act*, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.

page **9** of **14**

Case 1:18-cv-00160-WCG   Filed 07/25/18   Page 9 of 14   Document 25

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) (emphasis added) (internal citations omitted).

The issue for purposes of superiority is not, as Client Services stated it, whether a consumer "could" find a lawyer to bring an individual claim, it is whether a likelihood exists the individual class members would bring individual claims. The class claims raised in this case have not been brought by anyone else on either an individual or class basis. The claims of the estimated 4,300 class members who were mailed a letter to a Wisconsin address can be logistically adjudicated at one time in this Court. Thus, Client Services arguments are without merit.

### B.    *De Minimis Recovery.*

Client Services argues each class member would receive 23¢. Citing no authorities, it contends that fact makes a class action inferior. For decades, that argument has been raised in this Circuit and routinely rejected.

Factually, there is no support for the argument. To "prove" net worth, Client Services cited to its denial of requests for admission. Doc. 23 at ¶17 (citing to Doc. 16-3 at page 8). The requests sought to have Client Services admit its net worth was in excess of a stated amount ranging from $100,000 to $40,000,000. *Id.* at  ¶¶30-37. Client Services denied every request. These denials prove no facts.

Client Services never provided the Court with any evidence of its net worth. Client Services produced consolidated financial statements in response to discovery requests which included a line for "Members' equity." Those statements were marked CONFIDENTIAL and, therefore, are not being submitted and their content is not being disclosed. Counsel represents to the Court that the amount shown for "Members' equity" appears to undermine any assertion of a

*de minimis* recovery. In view of Client Services' failure to submit any evidence as to net worth and the following discussion which discredits the *de minimis* argument, there is no need to submit those financial statements. If, however, the Court requests them, they will be submitted.

Legally, the argument is specious—a conclusion Client Services should have reached had it researched Seventh Circuit decisions. Those decisions reflect more than twenty years where district courts in this Circuit certify FDCPA class actions and reject arguments that a class is not superior because either each class member's *per capita* distribution will be *de minimis* or each class member might be better off bringing an individual claim which is capped at $1,000.

The FDCPA expressly authorizes class actions by providing statutory damages capped at the lesser of $500,000 or 1% of the debt collector's net worth "without regard to a minimum individual recovery." 15 U.S.C. § 1692k(a)(2). Thus, "[t]he plain language of the FDCPA supports class certification even where individual class member recovery is likely de minimis." *Spice v. Blatt, Hasenmiller, Liebsker & Moore LLC*, No. 1:16-CV-366-TLS, 2018 WL 525723, at *9 (N.D. Ind. Jan. 24, 2018).

In *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997), the district concluded the class could not be limited to Wisconsin consumers but had to be a nationwide class, and then concluded that, as a nationwide class, the individual recovery would be only 28¢ which was too small to certify a class. The Seventh Circuit rejected both conclusions and held the district court could certify a Wisconsin-only class.

> But even if a nation-wide class were appropriate, we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

page **11** of **14**

Case 1:18-cv-00160-WCG   Filed 07/25/18   Page 11 of 14   Document 25

*Id.* at 344.

The Seventh Circuit then rejected the argument that the higher maximum recovery available to a plaintiff in an individual case, $1,000, defeats superiority. The court explained:

> True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Id.*

A generation later, the district courts have remained true to *Mace*.

In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503 (N.D. Ill. 2001), the court certified an FDCPA class action rejecting the argument that a *de minimus* recovery meant a class action was not superior.

*Carbajal v. Capital One*, 219 F.R.D. 437, 443 (N.D. Ill. 2004) certified an FDCPA class rejecting a *de minimis* recovery argument and observing, "The fact that particular individual plaintiffs could recover $1,000 in statutory damages if they sued individually does not alter this analysis."

In *Nichols v. Northland Groups, Inc.*, No. 05 C 2701, 2006 WL 897867 (N.D. Ill. Mar. 31, 2006), the court granted class certification notwithstanding a class member might obtain a larger recover bringing an individual claim, and rejecting the debt collector's arguments based only on out-of-circuit district court opinions that a *de minimis* recovery rendered individual actions superior to a class action. Similarly, in *Warcholek v. Med. Collections Sys., Inc.*, 241 F.R.D. 291 (N.D. Ill. 2006), the debt collector claimed to have a negative net worth but cited no authority within the Seventh Circuit denying a class action based on either a *de minimis* or no

individual recovery. *See, also, Barkouras v. Hecker*, No. CIV. 06-0366 (AET), 2006 WL 3544585 (D.N.J. Dec. 8, 2006) (certifying FDCPA class when debt collector had negative net worth). Similar to the observation in *Mace*, the *Warcholek* court observed, "Further, any class member that wishes to proceed on her own may opt out of the class." *Warcholek* at 296; *see Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 414 (N.D. Ill. 2006) (same).

*Seeger v. Aid Assocs., Inc.*, No. 05-C-944, 2007 WL 1029528, at *7 (E.D. Wis. Mar. 29, 2007) cited *Mace*, rejected the *de minimis* argument, and doubted whether the debt collector believed its own argument:

> Certainly, a class action would be more effective in informing putative plaintiffs of their rights after having received the defendant's form letter. Undoubtedly, most of these persons are unaware that the letter they received years ago violated the FDCPA, and if any are aware, few would pursue litigation. The defendant is well aware of this fact. The defendant implicitly concedes as much for if it was not true, it would be entirely illogical for the defendant to oppose certification of the class and rather wish to pursue a path that could potentially expose it to nearly six million dollars of liability (5,897 at $1,000 each), more than forty-six times the damages that it would face under a class action suit.

In *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008), the court certified an FDCPA class and rejected the *de minimis* recovery argument as well as the argument that class members could obtain a greater recovery by bringing individual claims. "Defendant's argument, however, presumes that the class members are aware that their rights may have been violated, and are willing and able to subject themselves to the burdens of bringing individual suits." *Id.* at 444.

Rejecting the argument there was no superiority because class members would be better off bringing individual claims, the court in *Fosnight v. LVNV Funding, LLC*, 310 F.R.D. 389, 394 (S.D. Ind. 2015) observed, "Even if the recovery is *de minimis,* there is value in

page **13** of **14**

Case 1:18-cv-00160-WCG    Filed 07/25/18    Page 13 of 14    Document 25

allowing class treatment here to address potentially unlawful behavior that would not otherwise be addressed because the barriers to bringing suit are too high."

The court in *Spuhler v. State Collection Servs., Inc.*, No. 16-CV-1149, 2017 WL 4862069 (E.D. Wis. Oct. 26, 2017) certified an FDCPA class and rejected the *de minimis* argument where each class member might receive as little as 37¢.

And earlier this year, *Spice* rejected a *de minimis* recovery argument. In addition to quoting *Mace* regarding class members' ability to opt out, the court observed, "The personal notice and opt-out requirements of Rule 23(b)(3) protect the interests of those who qualify as class members and desire to bring their claims separately." *Spice*, 2018 WL 525723, at *9.

Even if Client Services correctly stated the *per capita* distribution would be 23¢, that fact would not justify concluding this class action is superior to 3,400 individual cases.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to grant their motion for certification of a class under Fed. R. Civ. P. 23(a) and 23(b)(3).

Respectfully submitted this 25th Day of July 2018.

                                                        *s/ Philip D. Stern*
                                          Philip D. Stern (NJ Bar # 045921984)
                                          Andrew T. Thomasson (NJ Bar # 048362011)
                                          STERN•THOMASSON LLP
                                          150 Morris Avenue, 2nd Floor
                                          Springfield, NJ 07081-1315
                                          Telephone: (973) 379-7500
                                          Facsimile: (973) 532-2056
                                          E-Mail: philip@sternthomasson.com
                                          E-Mail: andrew@sternthomasson.com

                                          *Attorneys for Plaintiffs, Sarah M. Steffek and Jill Vandenwyngaard*