IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SARAH M. STEFFEK, and JILL
VANDENWYNGAARD, *et al.*,

                Plaintiffs,

    *vs.*                               Case No. 1:18-cv-00160-WCG

CLIENT SERVICES, INC., a Missouri
Corporation, *et al.*,

                Defendant.

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT AGREEMENT**

Plaintiffs, Sarah M. Steffek and Jill Vandenwyngaard, individually, and as representatives of the certified class defined in Section II ("Settlement Class"), on consent of Defendant, Client Services, Inc. ("CSI"), respectfully submit this Motion for Final Approval of the Parties' Class Action Settlement Agreement ("Agreement" or "Settlement") entered into on June 5, 2020. [Doc. 61-1.] In support of this Motion, Plaintiffs respectfully state the following:

## I. INTRODUCTION

Plaintiffs achieved a long, hard fought, and valuable settlement for Class Members that provides significant protections including direct payments of $33.06 to each Class Member and represents an important victory for Wisconsin residents in the sphere of consumer protection.

On June 15, 2020, the Court preliminarily approved the Settlement and conditionally certified the settlement class under Federal Rule of Civil Procedure 23(b)(3). [Doc. 63.] The Court should now grant final approval to the Settlement because it is a fair, reasonable, and adequate result for Class Members.

## II. OVERVIEW OF THE CASE

Plaintiffs' Complaint alleges CSI violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*. by mailing them collection letters which, by their terms, only described a debt CSI sought to collect and failed to "clearly and accurately" disclose the name of the creditor to whom the debts were then owed in satisfaction of 15 U.S.C. § 1692g(a)(2). [Doc. 1 (Exhs. A & B).]

On February 23, 2018, CSI filed an Answer denying all liability to the Plaintiffs and Class Members and asserting numerous Affirmative Defenses [Doc. 6.] Thereafter, the Court conducted a Rule 16 Conference, the Parties each served and responded to written discovery, and CSI took Plaintiffs' depositions. The Court docket reflects the Litigation was heavily contested.

On May 25, 2018, Plaintiffs filed a Motion for Class Certification, which CSI opposed. [Docs. 14 and 23.] On July 31, 2018, the Court granted Plaintiffs' motion and certified the following litigation class pursuant to Fed. R. Civ. P. 23(b)(3), consisting of 4,124 members:

> All persons with addresses in the State of Wisconsin to whom Client Services, Inc. mailed an initial written communication, between January 30, 2017 and February 20, 2018, which was not returned as undeliverable, and which lists "RE: CHASE BANK USA, N.A." and states "The above account has been placed with our organization for collections."

[Doc. 26.] On August 10, 2018, Plaintiffs filed a Motion to Approve the Form and Method of Notice to Class Members [Doc. 27], which the Court granted on August 22, 2018. [Doc. 29.]

The court-appointed class administrator, Heffler Claims Group ("Administrator"), established a toll-free telephone number and website for Class Member inquiries and, on September 7, 2018, served the Court's approved Notice of Pendency of Class Action. [Doc. 46, ¶¶3-10 (Exh. A).] Only 5 Class Members sought exclusion. [*Id.* at ¶12 (Exh. B).]

In the interim, on October 5, 2018, the Parties filed their respective Motions for Summary Judgment [Docs. 35 and 38] and fully briefed them [Docs. 39-47.]

On March 12, 2019, the Court granted summary judgment for CSI and denied Plaintiffs' motion [Docs. 49 and 50.] and, on March 18, 2019, Plaintiffs appealed the Court's decision to the Seventh Circuit Court of Appeals. [Doc. 51.] On January 21, 2020, the Seventh Circuit issued a decision reversing the grant of summary judgment in CSI's favor, entering judgment in Plaintiffs' favor, and remanding the case for further proceedings. [Doc. 56.]

On February 12, 2020, the Court spread the Seventh Circuit's mandate after which the Parties began settlement discussions. [Doc. 57.] On March 13, 2020, the Court held a second conference during which the Parties stated their intent to engage in private mediation; the Court set a: (i) deadline of June 15, 2020 for Plaintiffs' completion of discovery regarding damages; (ii) Final Pretrial Conference for July 24, 2020; and (iii) trial for August 12, 2020. [Doc. 58.]

Thereafter, the Parties engaged in further discovery regarding damages and continued their settlement discussions. The Parties chose Manuel H. Newburger, Esq. to serve as their mediator and, on May 28, 2020, the Parties personally participated in a full-day of mediation via Zoom Video Conferencing (due to the ongoing COVID-19 pandemic) during which they reached a tentative settlement in the late afternoon. The Parties' settlement was subject to CSI providing confirmatory discovery regarding its recently produced audited financials.

On June 2, 2020, Plaintiffs completed their due diligence and confirmatory discovery. Since March 13, 2020, the Parties' counsel thoroughly investigated and analyzed the legal and factual issues presented in the Litigation, the risks and expense involved in pursuing the Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through the Settlement, the protracted nature of the Litigation and the likelihood, costs, and possible outcomes of CSI's potential appeal of a final judgment. Based upon counsels' review

Page **3** of **14**
Case 1:18-cv-00160-WCG   Filed 09/24/20   Page 3 of 14   Document 65

and analysis, the Parties engaged in extensive arms-length discussions to resolve the Litigation, including mediation which ultimately culminated in the Agreement which resolves the claims of Plaintiffs and Class Members. [Doc. 61-1.]

On June 14, 2020, Plaintiffs filed their Unopposed Motion [Doc. 61] for Preliminary Approval of the Parties' Agreement, which the Court granted on June 15, 2020 [Doc. 63] ("Order"). The Court's Order found the Parties' Settlement satisfied all elements of Fed. R. Civ. P. 23(a) and 23(b)(3), and preliminarily certified the class as stated *supra*.

### III. SETTLEMENT TERMS

The Court considered Settlement's following terms when granting preliminary approval:

#### A. *Class Recovery.*

CSI will create a class settlement fund of $120,000.00 ("Class Recovery"), which Class Counsel through the Administrator will distribute *pro rata* ($29.13) to each Class Member who did not previously seek exclusion and whose Notice of Settlement was not returned as undeliverable. [Doc. 61-1, ¶11(a)]. Class Members will receive their *pro rata* share of the Class Recovery by check, which will be void 60 days from the date of issuance and any portion of the Class Recovery remaining after the void date will be donated as a *cy pres* award to a charitable organization approved by the Court. [*Id.* at ¶11(d)].

#### B. *Plaintiffs' Recovery.*

Subject to Court approval, CSI agreed to pay each Plaintiff $1,000.00 for their statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), plus an additional $4,000.00 in recognition of their services on behalf of the Class. [*Id.* at ¶11(b)].

#### C. *Attorneys' Fees and Costs.*

CSI agreed the Plaintiffs brought a "successful action" under 15 U.S.C. § 1692k and, therefore, subject to Court approval, are entitled to recover attorneys' fees and costs of

$165,000.00, which covers all fees and expenses arising from the Litigation and does not in any way reduce, the Class Recovery. [*Id.* at ¶12.] The Parties neither negotiated, nor agreed upon, any amount for Class Counsels' fees and costs (or Plaintiffs' payments) until *after* Class Members' material terms were resolved. *Id.*

### D. Defendant's Release.

Plaintiffs will give CSI what is, in effect, a general release. [*Id.* at ¶15(a).] The Class, however, is only releasing their Class Claims which are those arising from CSI's use of its objectionable form collection letter. [*Id.* at ¶15(b)-(c)]. Neither the Plaintiffs nor the Class are releasing any claim or defense they may have regarding the underlying debts CSI sought to collect, including, but not limited to (1) whether any debt is in fact owed, (2) crediting of payments on any debt, or (3) proper reporting of any debts to credit bureaus. [*Id.* at ¶15(b).]

### E. Class Settlement Notice & Right to Object.

The Settlement requires that, in accordance with the Preliminary Approval Order, Class Counsel arrange for the Administrator to mail the Court-approved Settlement Notice ("Notice") to all Class Members and include a deadline for filing objections to the Agreement. [*Id.* at ¶18].

The Administrator is also required to use the same mailing addresses it used to mail Class Members notice following the Court's certification of this action under Rule 23, but update the addresses using the Postal Service's National Change of Address database. *Id.* Each Notice shall be sent with a request for forwarding addresses and the Administrator shall forward all Notices returned as undeliverable to the new address provided within four (4) days of receipt. *Id.*

## IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Final approval of a class action settlement involves two inquiries. First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The first two steps already occurred. With this motion, Plaintiffs respectfully ask the Court to take the third and final step by granting final approval of the Settlement.

### A. *The Court Has Already Determined Class Certification.*

More often, litigants agree to class settlements *prior* to a court's grant of certification. In those circumstances, the court is called upon to preliminarily approve the settlement and conditionally certify the class for settlement purposes. In addition, the court will typically approve the form of notice to class members which would, among other things, inform the members of their right to "opt-out" *and* to react to the settlement terms by way of objection.

The Court previously certified the class [Doc. 26] and approved the form, method, and manner of providing notice to Class Members including their right to *exclude* themselves from the Class [Docs. 26 and 46]. That deadline expired long ago with only 5 Class Members requesting exclusion. [Doc. 46, ¶1.]

Later, on June 15, 2020, the Court granted preliminary approval to the Parties' Settlement and established a procedural framework for the Settlement's final approval, directed the Parties to implement the Court's Notice Plan for providing Notice of the Settlement to Class Members, set deadlines and procedures for them to object to the Settlement, and set a date and/time for a

Page **6** of **14**
Case 1:18-cv-00160-WCG    Filed 09/24/20    Page 6 of 14    Document 65

final fairness hearing. [Doc. 63.] The Parties carried out the Court's Notice Plan.

On June 24, 2020, CSI filed proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b). [Doc. 64.]

On June 29, 2020, the Administrator, caused actual notice to be sent by first class mail to each of the 4,119 Class Members ultimately identified in CMS's business records. [*Hamer Decl.*, ¶¶2-8.] As of September 23, 2020, a total of 492 notices were returned by the U.S. Postal Service as undeliverable of which two were returned with forwarding addresses and successfully re-mailed. [*Id.* at ¶8.] As of September 23, 2020, none of the Class Members objected to the Settlement. [*Id.* at ¶9; *Thomasson Decl.*, ¶¶9-11.]

### *B. Final Approval is Warranted Because the Settlement is Fair, Reasonable, and Adequate.*

In determining whether to grant approval, the Seventh Circuit has long recognized that federal courts strongly favor resolution of litigation through settlement and there is an overriding public interest in settling class action litigation, and it should therefore be encouraged. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotation marks omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The traditional means for handling claims like those at issue here as individual litigations would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims for most of the individual Class Members, would be impracticable. Thus, the Parties' Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement

is ultimately fair, adequate, and reasonable at the final approval stage, courts in this Circuit consider the following factors:

    (1)    the strength of Plaintiff's case compared to the proposed settlement terms;

    (2)    the likely complexity, length, and expense of continued litigation;

    (3)    the amount of opposition to settlement among affected parties;

    (4)    the opinion of competent counsel; and

    (5)    the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Id.* (quoting *Armstrong,* 616 F.3d at 315). In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

Application of those factors here confirms the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiffs' Case Compared to the Settlement Terms Supports Final Approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (quotation marks omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

Here, the Plaintiffs' case was strong—indeed, they had already succeeded in establishing CSI's liability on summary judgment. However, they still faced a trial on damages and the potential outcome was far less certain. The maximum recovery for the Class would be the lesser of $500,000 or 1% of CSI's net worth (*See,* 15 U.S.C. § 1692k(a)(2)(B)).

Had this case proceeded to trial, Plaintiffs and the Class might have received nothing, or substantially less than the maximum damages. The Settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the case, the uncertainty of delays, and the ultimate uncertainty of recovery at trial, the Settlement is fair, reasonable, and adequate. Through the Settlement, the Plaintiffs succeeded in recovering the maximum available individual and class damages, which is more than Class Members could have hoped to receive on their best day at trial.

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive, and Thus This Factor Favors Final Approval.

Plaintiffs' lawsuit has been pending for more than 2 ½ years and included an appeal to the Seventh Circuit. Although Plaintiffs had established CSI's liability, the likelihood of success for them Class Members was far less uncertain if they proceeded to trial. Plaintiffs' trial was neither likely to be complex nor lengthy—trial was limited to a single issue (damages) over 1.5 days [Doc. 58]. But trials, and preparing for them, can be expensive and the Parties were heavily engaged in scheduling approximately six party and non-party depositions, and completing written discovery, related to damages which had to completed prior to trial.

Given the prospect of protracted litigation over a single issue engendering enormous time and monetary expenditure, this factor tips in favor of approval.

### 3. Class Member Response Has Been Overwhelmingly Positive to the Settlement, Supporting Final Approval.

Here, 4,119 Class Members received actual direct notice; yet, not a single Class Member objected to the Settlement. The lack of ***any*** negative responses strongly favors approval of the Settlement. *See, e.g., In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *See also, Bell Atl. Corp. v. Bolger*, 2

F.3d 1304, 1314 n.15. (3d Cir.1993) (silence is a "tacit consent" to settlement). The lack of any objections strongly evinces the quality and value of the Settlement and supports final approval.

    **4. Class Counsel Strongly Endorse the Settlement.**

As noted, Plaintiffs succeeded in recovering the maximum available individual and class damages, which is more than they and Class Members could have hoped to after their best day at trial. The Settlement simply leaves nothing more to litigate. As such, Class Counsel strongly recommend approval of the Settlement and stand ready to further detail their recommendation at the final fairness hearing. *See, In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

    **5. The Stage of Proceedings and Discovery.**

This factor is less concerned with the quantum of time or volume of discovery than it is with there being a sufficient basis upon which to evaluate the merits of the case and to contrast those merits against the proposed settlement.

Here, the disputed issues between the Parties were primarily legal in nature and the Seventh Circuit had already resolved those issues and this Court had previously certified the class. The Court "need not find that the parties have engaged in extensive discovery." *See, e.g., In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)). However, as noted *supra*, Plaintiffs conducted extensive written discovery and depositions are complete; only discovery regarding damages remained and CSI provided several years of audited financial statements to support a determination on damages.

Thus, the stage of this case and the extensive discovery undertaken is appropriate to allow for a determination that this Settlement is fair, reasonable, and adequate.

## V. PLAINTIFFS REQUEST A REASONABLE INCENTIVE AWARD

The Settlement, if approved, provides for a $1,000 payment to each Plaintiff and an additional $4,000.00 in recognition of their services on behalf of the class. The FDCPA differentiates between the recovery available to named plaintiffs and class members. Thus, Plaintiffs may be awarded up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(B)(i).

"Incentive awards for class representatives are fairly common." *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014). "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Under the FDCPA's scheme, incentive awards are especially important because the Act provides no economic incentive for consumers to pursue class claims. Specifically, the Act only allows a plaintiff in a class action the same recovery as if s/he had merely pursued their own individual claim. *See*, 15 U.S.C. § 1692k(a)(2)(B)(i) referencing 15 U.S.C. § 1692k(a)(2)(A).

The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiffs request a modest $1,000 each, plus an additional $4,000 in recognition of their services on behalf of the Class, which is justified based on the fact both Plaintiffs stayed the course for over 2 ½ years pursuing Class Members' claims—they responded to written discovery, personally appeared for their depositions, personally participated in mediation before the Seventh Circuit and again for private mediation following remand. And, importantly, the Plaintiffs recovered the maximum available damages for the benefit of all Class Members who each receive a direct payment but, presumably, were unaware of their claims and never had to enshrine their names forever on a lawsuit like the Plaintiffs did for them. Plaintiffs' proposed

incentive award does not reduce the Class Recovery.

Thus, Plaintiffs' $4,000.00 incentive award is justified.

## VI. PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND LITIGATION EXPENSES

Under the FDCPA, the prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court."

> [A]ny debt collector who fails to comply with any provision of this title...is liable to such person … [for] damages, ... and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3). "[T]he award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). "[T]he methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide" in FDCPA cases. *Id.* The Supreme Court has held that "the lodestar method yields a fee that is presumptively sufficient" under § 1988. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Gastineau v. Wright,* 592 F.3d 747 (7th Cir. 2010).

Although CSI disputes liability, it agreed Plaintiffs brought a "successful action" under 15 U.S.C. § 1692k and, therefore, subject to Court approval, are entitled to recover attorneys' fees and costs of $165,000.00, which covers all fees and expenses arising from the Litigation. Importantly, Class Counsels' fees and costs do not in any way reduce, the Class Recovery. *Id.*

The Supreme Court has also encouraged a consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court wrote, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437; *accord In*

*re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). It is widely recognized that fee agreements between plaintiffs and defendants are urged. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through class actions, attorneys providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economical for defendants to practice injurious behavior. *See, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged (most persistently by retired Judge Posner of the Seventh Circuit) that in defining a "reasonable fee" in such representative actions, the law should "mimic the market." *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).

Here, the Parties avoided the possibility of a "second major litigation" by negotiating an agreement regarding Class Counsels' attorney's fees to be awarded, which only occurred *after* the Parties' had first resolved the other material Settlement terms. [Doc. 61-1, at ¶12; *Thomasson Decl.*, ¶¶11-12.] Thus, the Court need not guess what are the "market factors" as the Parties, by able and experienced counsel did so through their own extensive and protracted negotiations.

Additionally, as the Seventh Circuit recognizes, "to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the

law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995). [*Thomasson Decl.*, ¶¶13-26.]

Here, the lodestar method establishes the reasonableness of $165,000.00 and Class Counsels' hourly rates. As set forth in Class Counsel's Declaration, the lodestar method yields actual fees in the amount of $189,366.25 plus costs in the amount of $8,937.77. [*Id.* at ¶¶13-17.] Notwithstanding Class Counsels' *actual* lodestar, the Parties' Settlement limits Class Counsels' attorneys' fees and costs to $165,000.00. [*Id.* at ¶¶11-12; and Doc. 61-1, ¶12.]

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion and enter a Final Approval Order including an award of Class Counsels' fees and costs.

Respectfully submitted,

Dated: September 23, 2020

*s/Andrew T. Thomasson*
*Andrew T. Thomasson*
Andrew T. Thomasson (NJ Bar # 048362011)
Francis R. Greene (WI Bar # 1115577)
Philip D. Stern (NJ Bar # 045921984)
Katelyn B. Busby (AR Bar #2014133)
 *Attorneys for Plaintiffs and Certified Class*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone (973) 379-7500
E-mail: Andrew@SternThomasson.com
E-mail: Philip@SternThomasson.com
E-mail: Francis@SternThomasson.com
E-mail: Katelyn@SternThomasson.com